207 Cal.App.3d 992 (1989)
255 Cal. Rptr. 150
In re the Marriage of MARGARET J. and JOHN R. DeSHURLEY.
JOHN R. DeSHURLEY, Respondent,
v.
MARGARET J. DeSHURLEY, Appellant.
Docket No. D006782.
Court of Appeals of California, Fourth District, Division One.
February 2, 1989.
*993 COUNSEL
Michele Sacks Lowenstein for Appellant.
Ring & Cline and Richard D. Ring for Respondent.
OPINION
TODD, J.
Margaret J. DeShurley appeals a judgment confirming the separate property nature of severance pay received by John R. DeShurley from Continental Airlines pursuant to a bankruptcy court order.

FACTS
Margaret and John married on December 31, 1950, and separated on October 15, 1984. John was employed as a pilot with Continental Airlines from August 13, 1951, until about October 1, 1983, when he joined a strike called by the Air Line Pilots Association, International (ALPA).
On October 31, 1985, in the United States Bankruptcy Court, Southern District of Texas, Houston Division, case number 83-04019-H2-5, Continental Airlines and the ALPA submitted their pending claims, controversies and related litigation to the court for resolution. The bankruptcy court, in essence, ordered (1) the strike terminated, (2) no recrimination or retaliation be taken against striking pilots, (3) the parties to dismiss all litigation between them pending in federal courts, (4) striking pilots be given the option of being recalled and reinstated or severance pay.
The severance pay option provided that active pilots on Continental's seniority list as of September 24, 1983, could elect severance pay in exchange for waiving the right to recall and waiving the right to claims against the company connected with the strike. The amount of severance *994 pay was to be computed by multiplying $4,000 times the number of years of active service with Continental as of September 24, 1983.
John opted for the severance pay option and his severance pay was calculated at $126,800. According to the set schedule, John receives 10 percent before December 15, 1985, 15 percent before June 30, 1986, and the remainder in 20 quarterly payments, with 10 percent interest to be paid on amounts due after eight quarters from September 30, 1986.
John and Margaret worked out a division of their marital estate with the exception of the severance pay, which John claimed was his separate property. The trial court agreed.

DISCUSSION
(1) Margaret contends the severance pay is community property, and she is entitled to one-half of it. We disagree.
In In re Marriage of Skaden (1977) 19 Cal.3d 679 [139 Cal. Rptr. 615, 566 P.2d 249], the California Supreme Court found termination benefits paid to an insurance agent under an employment agreement to be community property. The benefits consisted of a percentage of insurance premiums collected on insurance policies sold by the agent. The Skaden court held the benefits were community property because they were deferred compensation for the agent's previous endeavors. (Id. at pp. 687-688.)
Following Skaden, the issue of whether termination or severance benefits were community or separate property was raised in four published cases: In re Marriage of Flockhart (1981) 119 Cal. App.3d 240 [173 Cal. Rptr. 818]; In re Marriage of Wright (1983) 140 Cal. App.3d 342 [189 Cal. Rptr. 336]; In re Marriage of Kuzmiak (1986) 176 Cal. App.3d 1152 [222 Cal. Rptr. 644]; and, most recently, In re Marriage of Horn (1986) 181 Cal. App.3d 540 [226 Cal. Rptr. 666].
In Horn, this court reviewed and analyzed the previous four cases and concluded the chief characteristic in cataloging termination or severance benefits is whether the benefits constitute (a) deferred compensation for past services or (b) present compensation for loss of earnings. If the benefits are deferred compensation for past earnings, the benefits are community property; if they are present compensation for loss of earnings, they are separate property. (181 Cal. App.3d at pp. 544-547.)
Horn further said the character of the benefits is to be determined by considering all relevant circumstances. (181 Cal. App.3d at p. 547.)
*995 At issue in Horn was the severance pay received by the husband from the National Football League (NFL) on his retirement from football. During the husband's playing days, the management of the NFL and the National Football League Players Association added a severance pay provision to the collective bargaining agreement, which provided any player with two or more seasons with the NFL is entitled to a lump sum of severance pay, the amount to be based on the player's number of NFL seasons. In finding the severance pay to be community property, the Horn court noted the characteristics: "... (a) it is derived from a contract right; (b) it is based on the number of seasons worked; (c) it must be paid back to the NFL if the player returns to professional football within one year of receipt; (d) it will be paid back to him when he again leaves football, but no additional amount will have accrued for the seasons worked after his return; (e) it is given to the player's stated beneficiary or estate if he dies; (f) it is received in a lump sum after a certain period of time has passed following the player's notification to the club of his intent to permanently retire from professional football." (181 Cal. App.3d 540, 547.)
The Horn court characterized the severance pay as community property because the husband had an absolute right to it based on his eight seasons with the NFL and the contractual agreement. (181 Cal. App.3d at p. 547.) The court noted that in In re Marriage of Flockhart, supra, 119 Cal. App.3d 240, In re Marriage of Wright, supra, 140 Cal. App.3d 342, and In re Marriage of Kuzmiak, supra, 176 Cal. App.3d 1152, (in all three cases it was held the severance pay was separate property) there were no absolute rights to receive severance pay, with the husbands in those three cases receiving severance pay only because a loss of work was forced upon them. (People v. Horn, supra, 181 Cal. App.3d at p. 547.) The Horn court also noted the three cases did not involve a contractual right to a payment. (Ibid.)
Here, the severance pay contains the following characteristics: (1) it is not derived from a contract but rather stems from a court order; (2) it represents an option between returning to work and foregoing the right to return to work in exchange for a payment; and (3) its amount is based on the number of years John worked for Continental.
The trial court was correct in characterizing John's severance pay as "compensation for [John] electing to forego future employment with Continental Airlines." It was not intended as a form of deferred compensation for services previously rendered, but rather represented present compensation for loss of his future earnings. Further, we note any salary John would have earned had he opted to go back to work at Continental Airlines would have been his separate property. (Civ. Code, § 5118: "The earnings and accumulations of a spouse and the minor children living with, or in the custody of, *996 the spouse, while separate and apart from the other spouse, are the separate property of the spouse.")
Margaret raises the following arguments: (1) John had an absolute right to the severance pay; (2) the severance pay was not designed to ease John's transition back into the work place or to replace lost income; and (3) the amount of severance pay was tied to his number of years of employment, which coincided with the years of the marriage.
We reject the characterization of John's severance pay as an absolute right; had John opted to return to work he would not have received the severance pay. Margaret bootstraps to this argument the observation that in In re Marriage of Skaden, supra, 19 Cal.3d 679, and Horn, supra, 181 Cal. App.3d 540, (community property cases) the severance pay would have been paid regardless of whether the employee was terminated voluntarily or involuntarily, while in In re Marriage of Flockhart, supra, 119 Cal. App.3d 240, In re Marriage of Wright, supra, 140 Cal. App.3d 342, and In re Marriage of Kuzmiak, supra, 176 Cal. App.3d 1152, (separate property cases) the termination was involuntary. We fail to see how this argument helps Margaret. John's termination was voluntary: he had the option to be recalled and reinstated, but chose instead severance pay. The voluntariness of John's termination alone, however, does not aid Margaret's argument. There is nothing in the record to indicate whether the severance pay was designed to ease John's transition back into the work force, a need arising from the circumstances of the involuntary termination, as was the case in In re Marriage of Wright, supra, and In re Marriage of Kuzmiak, supra. Further, the record does reflect the severance pay was intended to compensate John for foregoing the right to return to work and presumably earn income. In a similar vein is In re Marriage of Flockhart, supra, where a federal employee whose job was adversely affected by expansion of Redwood National Park received "weekly lay-off" benefits. The Flockhart court held the benefits were separate property, saying they were intended to presently compensate the employee for loss of earnings. (119 Cal. App.3d at p. 243.)
Finally, with respect to Margaret's point that John's severance pay was tied to the number of years he worked for Continental Airlines, in Horn, supra, 181 Cal. App.3d at page 547, we said such a factor is not determinative of whether the severance pay is "for services previously rendered." (See also In re Marriage of Kuzmiak, supra, 176 Cal. App.3d 1152, where the military separation pay was based on the number of years served and it was held to be separate property.)
We conclude, based on all relevant circumstances, John's severance pay represents present compensation for loss of future earnings and is therefore his separate property.

*997 DISPOSITION
Judgment affirmed.
Kremer, P.J., and Huffman, J., concurred.